IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| JOHN LEONCE | § | |
| vs. | § | NO. 7:03-CV-110-KA |
| THOMAS J. CALLAHAN, et al | § | |

## MEMORANDUM ORDER
## GRANTING MOTION FOR SUMMARY JUDGMENT

The parties have heretofore consented to trial of this cause by the Magistrate Judge. Pending before this Court is a Motion for Summary Judgment with an Appendix filed by Defendants, Thomas J. Callahan, Wichita County Sheriff ("**Callahan**") and Wichita County, Texas ("**County**") (docket entry numbers 61 and 63). Plaintiff John Leonce ("**Plaintiff**" or "**Leonce**") has filed a detailed Response with an Appendix (docket entry numbers 74 and 75. Thereafter, Defendants filed a Reply with additional affidavit in an appendix (docket entry numbers 78 and 79).

The parties have included in their submissions in the Appendices the results of discovery conducted in the case, including portions of Leonce's deposition testimony, responses to discovery requests and multiple supporting affidavits. Based upon a careful review of the pleadings, motions, summary judgment record and applicable law, this Court **grants the Motion for Summary Judgment** for the reasons detailed below.

### I
### Background

This is a religious discrimination case brought by Leonce against Defendants for an alleged violation of Title VII of the Civil Rights Act of 1964, 42 USC § 2000e (hereinafter "Title VII"), claiming that the Defendants terminated Plaintiff's employment because of religious discrimination.

Following an application and interview process, Plaintiff was hired by the Wichita County Sheriff's office as a detention officer. His employment was "conditional" employment since additional

on-the-job training and classroom training were required for him to meet the status as "countable" as a Wichita County Sheriff's Office Detention Officer under regulations promulgated by the Texas Commission on Jail Standards. There is significant dispute between Leonce and Defendants as to the content of discussions between certain of the Sheriff's Office personnel involved in the hiring process and the Leonce regarding assignment of "days off." However, there is no dispute that six days after he accepted the offer of conditional employment, Lt. Dave Mauldwin informed Leonce that he would have Saturdays and Sundays off temporarily until he became "countable" and after he became "countable" his days off might change. At that time, Leonce informed Mauldwin that he could not work Friday sundown until Saturday sundown because of his religious affiliation as a Seventh Day Adventist. Later that day, Leonce volunteered that he could work the first shift on Friday (7:00 a.m. to 3:00 p.m.) and then the third shift on Saturday (11:00 p.m. to 7:00 am the next day). The Sheriff's Department personnel informed Leonce that his proposed work schedule would not be available and that he either needed to be able to work any shift on any day or he could turn in his resignation. He refused to resign. Later that same day, Wichita County hand delivered to Leonce a letter notifying him that as an "at will" probationary employee of the Wichita County Sheriff's Office his services were no longer required.

While it is disputed whether Plaintiff had been previously informed that he could always take the Saturday shifts[1] as a "day off" or whether he had been informed that assignment on the Saturday shifts would be likely once he became "countable," it is undisputed that Plaintiff's employment was terminated because he did not assure the Defendants that if assigned to a Saturday shift he would show up and work such shift. Prior to terminating Plaintiff's employment, Sheriff's Office personnel met with Plaintiff and informed him that senior officers were given first choice on days off and that Sheriff's Office could not guarantee that he would have his requested days off on a permanent basis. In addition to the reference to the seniority granted to senior officers to have first choice on days off, no other reason was articulated

---

[1] defined by the parties' briefs as the time period beginning sundown Friday and ending at sundown on Saturday

by the Sheriff at that time for the immediate termination of Leonce's employment. Apart from Leonce's own volunteering that he was willing to work first shift Friday (ending prior to sundown)and third shift Saturday (commencing after sundown), no other accommodation was proposed by Leonce or by the Defendants.

## II
## Summary Judgment Standards

Standards for determining summary judgments are well articulated and need not be repeated here for the discussions and citations add nothing to the jurisprudence. See *Celotex Corp. v. Catrett, Administratrix, 477 U. S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)* and *Weber v. Roadway Express, 199 F. 3d 270 (5th Cir. 2000).*

## III
## The Act

Title VII requirements with respect to religious discrimination in employment practices are embodied in 42 U.S.C. Sec. 2000*e et seq.*

Section 2000e(j) of Title 42 U.S.C. provides:

*(j) The term "religion includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."*

Section 2000e-2(a)(1) provides, in pertinent part:

*"(a) It shall be an unlawful employment practice for an employer- -*

*(1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin..."*

## IV
## Reasonable Accommodation and Undue Hardship

An employer's obligation under Title VII to provide reasonable accommodation except for undue hardship has been addressed repeatedly by the United States Supreme Court and the Fifth

Circuit Court of Appeals, along with other Circuits. The obligation has recently been summarized by Judge Lee Rosenthal in the *Favaro*[2] case:

> "Title VII of the Civil Rights Act of 1964, as amended, prohibits an employer from discriminating against an employee on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The statute defines "religion" to include "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). "The employer violates the statute unless 'it demonstrates that [it] is unable to reasonably accommodate... an employee's... religious observance or practice without undue hardship on the conduct of the employer's business.'" Beadle v. City of Tampa, 42 F.3d 633, 636 (11th Cir. 1995), cert. denied, 132 L. Ed. 2d 846, 115 S. Ct. 2600 (1995), citing Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60,107 S. Ct. 367, 372, 93 L. Ed. 2d 305 (1986).
>
> "The employee's *prima facie* case is established by showing that: he holds a sincere religious belief[**8] that conflicts with an employment requirement; he has informed his employer of the conflict; and he was discharged or disciplined for failing to comply with the conflicting requirement. Cooper v. Oak Rubber Co., 15 F.3d 1375, 1378 (6th Cir. 1994) (citations omitted). Once a *prima facie* case is established, the burden shifts to the employer to show that it could not reasonably accommodate the employee without undue hardship. *Id*. The reasonableness of an employer's attempt to accommodate is determined on a case-by-case basis. If the employer's efforts fail to eliminate the employee's religious conflict, the burden remains on the employer to establish that it is unable reasonably to accommodate the employee's beliefs without incurring undue hardship. *Id*. To require an employer to bear more than a *de minimis* cost in order to accommodate an employee's religious beliefs is an undue hardship. *Id*., citing TransWorld Airlines, Inc. v. Hardison, 432 U.S. 63, 97 S. Ct. 2264, 2277, 53 L. Ed. 2d 113(1977)."

I find that Leonce had a bona fide religious belief that conflicted with the employer's employment requirement; that Leonce informed his employer of that belief; and that Leonce was discharged for failing to comply with the conflicting employment requirement. *Daniels v. City of Arlington, 246 F. 3d 500, 506 (5th Cir. 2001) citing Weber v. Roadway Express*, supra. at page 273 *and Turpen v. Mo.-Kan.-Tex. R.R. Co., 736 F. 2d 1022, 1026 (5th Cir. 1984)*. Plaintiff has shown a *prima facie* case of religious discrimination. With a prima facie case thus established, the burden shifts to the County, as the employer, to show that if was unable reasonably to accommodate the Plaintiff's religious needs without undue hardship. In *Turpen*, Judge Gee summarized the employer's burden and limitations on that burden as follows:

---

[2] *Franklin P. Favero, Sr. v. Huntsville Independent School District*, 939 F.Supp. 1281, 1286 (S.D. TX - Houston Div. 1996), affirmed 110 F.3d 793 (5th Cir. 1997)

> "As the Supreme Court recognized in the leading case construing the scope of the employer's duty, *Trans World Airlines v. Hardison, 432 U.S. 63, 97 S. Ct. 2264, 53 L. Ed. 2d 113 (1977)*, courts must [**11] balance the prohibitions of the *Establishment Clause* of state-mandated favoritism in employment on the basis of religion and the respect for "bona fide" seniority systems built into the statutory scheme of Title VII against Congress' intent in § 701(j) to correct discrimination on the basis of religion. *Hardison* held that the statute does not require an employer to deviate from its seniority system in order to give an employee shift preference for religious reasons, *432 U.S. at 81, 97 S. Ct. at 2275*, and that accommodation that would require an employer to incur a greater than *de minimis* cost or would create a greater than *de minimis* imposition on co-workers constitutes undue hardship. *Id. at 84, 97 S. Ct. at 2276.*"

Defendants have alleged and articulated by affidavit support that the Sheriff's office had a long-standing seniority system in place at the time of the incident that allowed senior officers priority in choosing their desired days off. Plaintiff does not dispute and has stipulated (p. 6 Plaintiff's Response to Defendant's Motion for Summary Judgment) that such seniority system had been established before and did exist at the time of Plaintiff's employment. Though not evidenced in any writing presented to the Court, it appears that the system was established by policy and historical practice in lieu of any written agreement (either private or collectively bargained).

The County ardently asserts that the application of its seniority system necessarily precluded it from making any accommodation to Leonce without the County incurring undue hardship. Thus it had no obligation to explore, discuss, suggest, or provide any accommodation and was justified in summarily terminating Leonce's employment.

In the Americans with Disabilities Act context the Supreme Court held that the mere existence of a seniority system does not trump an employer's ADA obligation to accord a disabled employee a reasonable accommodation if one can be accorded without "undue hardship" and not every imagined hardship is "undue." *U.S. Airways v. Barnett, 535 U. S. 391,122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002).*[3] Applying the Court's *U. S. Airways* rationale in the Title VII context of this case I conclude that the mere

---

[3] In *U. S. Airways* the Court explored the scope of each element of the phrases "reasonable accommodation" and "undue hardship" albeit in the ADA and not Title VII context. Nevertheless, Congress articulated the responsibilities of employers in each context using the same exact phrases.

existence of an established seniority system that may be impacted by an employee's religious practice imperatives does not trump the employer's obligation to accord the employee a reasonable accommodation under Title VII circumstances. Rather, the availability of an accommodation that is "reasonable" must be measured against the "hardship" such accommodation would cause the employer. That hardship impact may be direct on the employer or indirect through its impact on the other employees. *Weber v. Roadway Express,* supra; *Bruff v. North Mississippi Health Services, 244 F. 3d 495, 501 (5th Cir. 2001).* Furthermore, the degree of "hardship" may be quite small so long as it is more than *de minimis.* "Any cost in efficiency or wage expenditure that is more than *de minimis* constitutes undue hardship.. [t]he cost of hiring an additional worker or the loss of production that results from not replacing a worker who is unavailable due to religious conflict can amount to undue hardship." *Lee v. ABF Freight System, 22 F. 3d 1019, 1023 (10th Cir. 1994)* citing *Hardison,* supra, 432 U. S. at 84. The impact must be measured on a case by case basis.[4]

Leonce claims that the Defendants wholly failed to explore, discuss, offer or provide any accommodation whatsoever. Defendants did not discuss any possible accommodations; did not counsel with Plaintiff regarding any possible accommodations; did not explore with others any possible accommodation; did not consider any flexibility or swaps in shifts, scheduling, or assignments (voluntary or otherwise); and did not suggest or offer another position. Nothing, just "since you will not work Saturday shifts, you are fired." In this respect this case is not unlike the situation addressed by Judge Rosenthal in *Favaro.* Just as in *Favaro,* the employer made no accommodation, reasonable or otherwise, relying instead on its assertion that any accommodation to plaintiff's religious needs would create an "undue hardship."

Under these circumstances in this case the County must bear the burden of proof to establish as a matter of law that in the universe of possible reasonable accommodations, there is not one that would

---

[4] *Favaro,* supra. at p. 1286

not cause undue hardship on the County. The hardships articulated by the County arise out of the simple proposition that if the Plaintiff is not there on the Saturday shift, someone else would have to be there in his place at that time. This is so, says the County, since the County must maintain a certain officer-to-offender ratio at its jail at all times and could not simply operate with one less employee on the Saturday shift.. One of the other employees (more senior or equal in seniority to Leonce) would have to fill his slot to make up the ratio or the County could be exposed to sanctions by the State. Someone else, says the County, whether a more senior officer or other recruit, might have his own favorable employment condition detrimentally impacted leading to the commensurate disgruntling and loss of morale, a impact the Courts have found to be a hardship more than *de minimis*.

What about voluntary shift "swapping"? The courts and EEOC[5] have found that voluntary shift "swapping" is a viable accommodation that an employer may implement or encourage to avoid the discriminatory impact of the work schedule. Under this system other employees may be compelled by the employer or may voluntarily take the Employee's shift in a shift swap. The problem with this form of accommodation under the facts of this case is that Leonce's religious imperative not to work on the Saturday shift (the Sabboth) was ongoing and permanent. In all reasonable likelihood, there would come a time when there was no willing volunteer to take Leonce's shift and Leonce and the County would be right where they were on July 9, 2001- facing the accommodation issue again.

The alternative of adding an extra employee on the subject Saturday shift would cost the County more money in the form of the extra employee's salary. Even if Leonce reimbursed the County for that additional cost, other employees could have hard feelings (*i.e.,* lower morale). This would violate the County's seniority based days-off system, its "standby for overtime" system, and would prevent Leonce

---

[5] See 29 C.F.R. § 1605.29(d)(i)-"Reasonable accommodation without undue hardship is generally possible where a voluntary substitute with substantially similar qualifications is available. One means of substitution is the voluntary swap. The Commission believes that the obligation to accommodate requires that employers... facilitate the securing of a voluntary substitute with substantially similar qualifications. (Emphasis supplied).

himself from getting the mandatory training at the class sessions occasionally scheduled for Saturdays.[6] These same impacts have been addressed in other title VII cases within this Circuit and have been found to be more that *de minimis* hardships on the employer. See *Weber, supra*, where "skipping over" unduly burdening co-workers was more than *de minimis* hardship, *Turpen,* supra., where "swing shift" reassignment was undue hardship, and *Eversley v. Mbank, 843 F. 2d 172, 176 (5th Cir. 1988)* forcing shift change on co-employee was undue hardship.

Therefore, I find that the County has met its burden of proof to establish as a matter of law that there was no reasonable accommodation that it could have made to Leonce that would not have imposed an undue hardship on the County. Contrary to Plaintiff's assertion, I find that it was not necessary that Leonce actually be scheduled for Saturday service and then refuse to work for the undue hardship to be recognized. Title VII does not require an employer to actually incur accommodation costs before asserting that they are more than *de minimis*. *Bruff v. North Mississippi Health Services,* supra. at p. 501.

I also find that there are significant factual issues and evidentiary disputes as to whether there was a non-discriminatory independent ground for the County's termination of Leonce's employment arising from his claimed failure to disclose on the employment application [7] or during the interview process that he had religious objections to working the Saturday shift. The application forms do contain references to the 24 hour per day and 3 shift schedules, but do not clearly indicate that the detention officer job qualifications required 7 day per week availability. There is strong affirmative affidavit support from the County's employees and former employee who were engaged in the pre-employment interviews with

---

[6] From the unopposed portion of Bertie Foster's affidavit, Exhibit E of Defendant's Appendix, Docket No. 70

[7] The Personal History Statement form filled out by Leonce ( Exhibit J in Docket No. 63) as a part of the employment application process with the County asked "DO YOU HAVE ANY RELIGIOUS OR OTHER BELIEFS WHICH WOULD PREVENT YOU FROM FULLY PERFORMING THE DUTIES OF A DEPUTY SHERIFF, INCLUDING WORKING ON WEEKENDS, EVENING OR NIGHT SHIFT? YES___ NO___ " To this question, Leonce did not check either line but answered in his own hand "Applying as Detention Officer". This the county claims was deceptive conduct by Leonce. Leonce says that he answered truthfully since he was not applying to be a "deputy sheriff."

Leonce that they informed him in advance of the possibility or probability of his being assigned a Saturday shift from time to time and of his failure to inform them of his religious objections to such schedule assignments. But there is such a serious dispute among Leonce and those participants as to who said what to whom during the interviewing process as to preclude this court from finding that Leonce has either manufactured his claims or is precluded from any relief because of lack of bona fides or clean hands.

Leonce countered the County's claim by asserting that the claim was a mere pretext. There is simply insufficient evidentiary support for the Court to find that Leonce's claim that the County's belated assertion that there was a non-discriminatory independent ground for Leonce's termination was fabricated after the fact and was pretextual.

Based upon the foregoing, I conclude that the Defendant's Motion for Summary Judgment should be **GRANTED**.

**IT IS SO ORDERED**, this 3rd day of January, 2008.

_____
**ROBERT K. ROACH**
**UNITED STATES MAGISTRATE JUDGE**